IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
(WESTERN DIVISION)

| | |
|---|---|
| ZECHARIAH DRAKE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. |
| ADMINISTRATIVE OFFICE OF COURTS AND NATHAN WILSON IN HIS OFFICIAL CAPACITY, | ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

The plaintiff Zechariah Drake complains against the Defendant State of Alabama as follows:

### JURISDICTION & VENUE

1. The plaintiff Zechariah Drake was a former employee of the State of Alabama. Mr. Drake worked as a juvenile probation officer in Tuscaloosa County for the State of Alabama. Mr. Drake resides in Tuscaloosa County, AL. He brings suit under the Family and Medical Leave Act and the Rehabilitation Act to challenge his termination of employment. This Court has jurisdiction pursuant to 29 U.S.C. § 2615 (b), 29 U.S.C. § 794a, 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. The Administrative Office of Courts (AOC) is an agency of the State of Alabama and administers Alabama's unified judicial system.

3. Nathan Wilson is the Administrative Director of Courts. Mr. Wilson is responsible for the day-to-day operation of AOC. Mr. Wilson is sued in his official capacity and only for the purposes of obtaining appropriate equitable relief.

**FACTUAL ALLEGATIONS**

4. AOC employed Mr. Drake as a juvenile probation office in May of 2019. Mr. Drake worked for AOC in the Sixth Judicial District under the supervision of the Circuit Court Judge responsible for overseeing domestic relations and juvenile justice cases.

5. Mr. Drake was diagnosed with a condition that impaired the normal functioning of his digestive system. In an effort to alleviate the condition, Mr. Drake underwent surgery which removed a section of his colon but he continued to experience complications related to his condition which substantially limited the major life activities, among others, of eating, sleeping, concentrating, memorizing, and/or working. As a result of these health problems, Mr. Drake also experienced mental health issues that also impaired the major life activities of concentrating, memorizing, caring for self, and/or working.

6. AOC requires probation officers to complete twelve hours (12) (six hours online and six hours in person) each year of continuing education units (CEU) in order to renew certification as a juvenile probation officer (JPO). The 12 hours must be completed by December 31 each year. One hour of the required 12 hours must cover ethics. AOC offers the required ethics course at the Annual JPO Conference typically held in September or October each year. AOC videos the ethics class and posts it online for JPOs who could not attend the conference. The ethics hour is available to watch online the week following the annual JPO conference until sometime in December each year.

7. On December 12, 2024, Mr. Drake emailed April Johnson (an AOC Family Court Services employee) asking for permission to complete and submit the one (1) hour ethics course after the December 2, 2024 deadline. Mr. Drake explained that he had accidentally watched the 2023 ethics course and when he realized his mistake, he started watching the 2024 ethics course.

Mr. Drake was experiencing complications for his medical conditions that contributed to the lapse in completing the ethics hour prior to December 2, 2024.

8. On December 20, 2024, Mr. Drake submitted a CEU application approval to his CPO Ms. Ingle requesting approval to take a four (4) hour on-line course on Adolescents and Addiction and a five (5) hour on-line course on Bullying and Mental Health in Children and Adolescents. Mr. Drake asked to apply any additional CEUs over the 2024 required hours towards the 2025 requirement. Mr. Drake did not receive a response to his CEU approval application prior to December 31, 2024.

9. On January 7, 2025, Mr. Drake resubmitted the 2024 CEU approval application directly to Ms. Johnson after his supervisor signed the application form. Mr. Drake requested permission to apply the CEUs from these courses to his 2024 CEU requirement. On that same day, Ms. Johnson informed Mr. Drake that the 12 hours each year are due on December 31st and that his CPO Ms. Ingle would hear from Mandi at AOC in the near future.

10. Upon information and belief, probation officers and other employees requiring certification have been given a thirty (30) day grace period to complete and submit missing CEUs for the prior calendar year.

11. On or about March 31, 2025, Mr. Drake requested intermittent leave under the FMLA for the period between March 27, 2025 and July 30, 2025. He was experiencing gastro-intestinal problems and was under the care of a physician.

12. On April 11, 2025, Mr. Drake was informed that he would need to repeat intake training on May 6, 2025. Mr. Drake registered for the intake training and planned on attending.

13. On April 18, 2025, Kalvin Smith (HR manager) informed Mr. Drake that his request for intermittent FMLA leave had been approved.

14. On April 25, 2025, Mr. Drake underwent surgery for a hernia related to his gastro-intestinal conditions. He was on leave until May 1, 2025.

15. On May 5, 2025, Mr. Drake experienced further complications related to his disability and medical condition. He informed his CPO Ms. Ingle and Mr. Riley Belden (the AOC employee overseeing the intake training) that he was not able to attend the training due to his medical condition and was taking approved FMLA leave for the period of May 5 through May 8, 2025.

16. During this period between May 5, 2025 and May 8, 2025, Mr. Drake received medical care from the team of doctors who were treating his gastro-intestinal conditions.

17. On May 9, 2025, Mr. Drake returned to work. He inquired about options for attending the next intake training with his supervisor and did not receive a response. Additionally, Mr. Drake emailed AOC personnel on May 29, 2025 about making up the intake training but received no response.

18. On June 12, 2025, Mr. Drake received correspondence from the Administrative Director of Courts Nathan P. Wilson. Mr. Wilson informed Mr. Drake that he was short 3.25 CEU hours for 2024 and noted that though Drake had registered for the May 6, 2025 intake training but did not attend due to medical leave.

19. Mr. Wilson also stated incorrectly that Mr. Drake had taken no initiative to rectify his deficiency after he failed to attend the May 6, 2025 training. Wilson failed to mention that on December 20, 2024, Mr. Drake had submitted a CEU approval application that had it been acted upon on would have allowed him to satisfy most of the shortfall. Nor did Wilson mention that on January 7, 2025, Mr. Drake had renewed his CEU approval application.

20. On June 18, 2025, Mr. Drake responded to Mr. Wilson's June 12, 2025 letter. Mr. Drake explained his medical condition and why the medical leave from May 5 to May 8 was necessary. Mr. Drake informed Mr. Wilson that when he returned from leave, he immediately reached out to his supervisor about options to make-up the CEU deficiency and that he emailed AOC on May 29, 2025 about rectifying the deficiency but received no response. Mr. Drake also noted that (1) he had registered for the June 27, 2025 Strengthening Families & Communities training in Scottsboro AL that was preapproved for 4.5 CEU to rectify the 2024 deficiency; (2) he was willing to attend the next available intake training in August 2025 without receiving 2025 CEU credit, and (3) that as of June 18, 2025, he had completed 8.5 CEUs for 2025 and had registered to attend the 2025 Domestic Violence Awareness in-person training in December 2025.

21. Notwithstanding Mr. Drake's efforts to satisfy the CEU requirements and his proposed remedial plan, Mr. Drake was notified on July 11, 2025 that his certification was being revoked as of July 12, 2025 and as a result he would not be allowed to fulfill his duties as a JPO. Mr. Drake was informed that he was being placed on administrative leave with pay effective July 13, 2025 and that his employment would be terminated effective July 31, 2025.

22. Mr. Drake's employment was terminated effective July 31, 2025.

## COUNT I
### (Section 504 Rehabilitation Act)

23. Mr. Drake restates and incorporates by reference the factual allegations in paragraphs 4-22.

24. The State of Alabama is a federal funds recipient. Upon information and belief, in FY 2025, Alabama received funding from the United States Department of Justice's Office of Juvenile Justice and Delinquency Prevention, among other funds related to, family services and juvenile justice. As a federal funds recipient, Alabama has waived its Eleventh Amendment

immunity for claims brought under Section 504 of the Rehabilitation Act (i.e. 29 U.S.C. § 794). See, *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1293 (11th Cir. 2003) (Garrett II).

25. As noted above, Mr. Drake is an individual with a disability as defined under the Rehabilitation Act. His gastro-intestinal medical conditions limited several major life activities.

26. On December 20, 2024, Mr. Drake requested as an accommodation that AOC approve a CEU application in order for him to complete his 2024 CEU requirements.

27. On January 7, 2025, Mr. Drake renewed this CEU approval application. Rather than accepting these requested accommodations, AOC required Mr. Drake to attend intake training on May 6, 2025.

28. Mr. Drake requested that AOC accommodate his disability when he was unable to attend the May 6, 2025 intake training because his disability flared up and he needed the leave to receive further medical treatment for his medical condition.

29. Mr. Drake also requested that (1) AOC allow him to attend the next scheduled intake training or (2) that AOC accept the June 27, 2025 Strengthening Families & Communities training in Scottsboro AL that was preapproved for 4.5 CEU to rectify the 2024 deficiency.

30. At no point during 2025, did Mr. Drake's supervisors indicate that his performance as a JPO was deficient. Mr. Drake performed the essential functions of a JPO. He took the minimal amount of leave needed to care for this medical condition.

31. <u>Disability Discrimination</u>: AOC discriminated against Mr. Drake on account of his disability when it revoked his certification and terminated his employment. AOC knew that Mr. Drake was an individual with a disability, and it decided terminate him because it wanted a non-disabled employee to fill the position of JPO.

32. AOC has allowed similarly situated non-disabled employees who failed to complete the 12 hours of CEU to make up such short-fall and avoid revocation of their certification.

33. AOC's discrimination against Mr. Drake because of his disability violated Section 504 of the Rehabilitation Act.

34. <u>Failure to Accommodate.</u> AOC failed to provide Mr. Drake with a reasonable accommodation. Mr. Drake requested three specific accommodations that AOC unreasonably rejected. First, he requested in January 2025 that he be allowed to take two continuing education courses and have them applied to the 2024 requirement. Second, he requested that he be allowed to take the second intake training scheduled in 2025. Historically, AOC scheduled two intake trainings each year. When it required JPOs in the past to attend intake training, it has allowed such employees to do so during the second August intake training. AOC refused Mr. Drake's request to attend the second intake training in August 2025 because his disability prevented him from attending the first intake training in May 2025. AOC provided no explanation for why it rejected this requested accommodation.

35. Second, AOC also unreasonably rejected Mr. Drake's request that it accept the June 27, 2025 Strengthening Families & Communities in person training in Scottsboro AL that was preapproved for 4.5 CEUs to rectify the 2024 deficiency. AOC provided no explanation for why it rejected this requested accommodation.

36. AOC had previously rejected without explanation, Mr. Drake's December 20, 2024 and January 7, 2025 CEU approval applications. Had AOC accepted the CEU approval application, Mr. Drake would have satisfied all but one hour of ethics for his 2024 CEU requirements.

37. AOC's refusal to grant Mr. Drake his requested accommodations violated Section 504 of the Rehabilitation Act.

## COUNT II
### (FMLA – Against Mr. Wilson for Prospective Relief Only)

38. Mr. Drake restates and incorporates by reference the factual allegations in paragraphs 4-22.

39. Under Section 12-5A-2 of the Alabama Code, Mr. Wilson, as the Administrative Director of Courts, oversees and administers the training, certification and renewal of certification of Juvenile Probation Officers (JPO).

40. On June 12, 2025, Mr. Wilson informed Mr. Drake that he had not completed all his 2024 CEUs and that he had not qualified for renewal of his certification as JPO. Mr. Wilson noted that Mr. Drake did not attend the May 6, 2025 intake training because of his medical condition.

41. Mr. Wilson did not allow Mr. Drake the opportunity to attend a second intake training or to substitute other in-person training in order to "rectify" the CEU deficiency noted in the June 12, 2025 letter.

42. Mr. Wilson's decision to only offer the May 6, 2025 intake training to "rectify" the CEU deficiency penalized Mr. Drake for using pre-approved intermittent FMLA leave on May 6, 2025 to treat a serious medical condition and interfered with the exercise of rights under the FMLA.

43. Mr. Wilson's decision to terminate Mr. Drake's employment because he did not attend the May 6, 2025 intake training interfered with Mr. Drake's exercise of rights under the FMLA.

44. Mr. Wilson's interference with Mr. Drake's FMLA rights violated 29 U.S.C. § 2615(a)(1).

## PRAYER FOR RELIEF

45. Wherefore premises considered, Mr. Drake respectfully requests that the Court enter an order awarding the following relief:

(a) backpay, reinstatement, compensatory damages or such other legal or equitable relief against AOC for violation of Section 504 of the Rehabilitation Act;

(b) an order requiring Mr. Wilson to renew Mr. Drake's certification as a JPO or take such other action to allow for renewal certification;

(c) an order requiring Mr. Wilson to reinstate Mr. Drake to his former position of JPO or take such other action required to reinstate Mr. Drake employment;

(d) an order requiring Mr. Wilson to take such equitable or prospective relief needed to remedy a violation of the FMLA;

(e) a reasonable attorneys' fee plus all allowable costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

/s/*Richard P. Rouco*
Richard P. Rouco
QUINN, CONNOR, WEAVER,
  DAVIES & ROUCO LLP
2 – 20th Street North, Ste. 930
Birmingham, AL  35203
(205) 870-9989
rrouco@qcwdr.com